**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| SERGIO CABRAL, *individually and on behalf of those similarly situated*, | |
| Plaintiff, | CIVIL ACTION NO. 1:23-CV-01316 |
| v. | (MEHALCHICK, J.) |
| PENSKE TRUCK LEASING CO LP, | |
| Defendant. | |

<u>**MEMORANDUM**</u>

Plaintiff Sergio Cabral ("Mr. Cabral") brings this action on behalf of himself and those similarly situated against Penske Trucking OP LP ("Penske"). (Doc. 1). Cabral alleges Penske violated the Telephone Consumer Protection Act ("TCPA") 47 U.S.C. § 227(b) by leaving him and others a prerecorded voicecall without consent. (Doc. 1). The operative amended complaint was filed on November 7, 2023. (Doc. 31). Before the Court is a motion to dismiss for failure to state a claim, lack of jurisdiction, or in alternative, a motion to strike filed by Penske. (Doc. 33). For the following reasons, Penske's motion will be **DENIED**.

**I.    BACKGROUND AND PROCEDURAL HISTORY**

The following background is taken from the amended complaint. (Doc. 31). On or around August 17, 2021, Mr. Cabral alleges he received an unsolicited prerecorded voicecall from Penske during which it played the following prerecorded message:

> Hello this is Chris calling from Penske Truck Rental at 1-800-305-7201. We wanted to follow-up and see where your moving plans currently stand. Penske has multiple locations and we have plenty of solutions and options for you and your transportation needs at the moment. Give us a call back here at 1-800-305-7201 so we can discuss how we can not only get you the best possible rate, but also take care of you during this time.

(Doc. 31, ¶ 10).

According to Mr. Cabral, the message was patently prerecorded as the voice sounded robotic and generic. (Doc. 31, ¶ 12). Mr. Cabral alleges that "[a]t no point in time did Plaintiff provide Defendant with his express written consent to be contacted utilizing prerecorded messages." (Doc. 31, ¶ 16). Accordingly, Mr. Cabral filed the instant lawsuit on behalf of himself and those similarly situated alleging Penske violated the TCPA. (Doc. 1). As relief, Mr. Cabral seeks an award of actual and statutory damages. (Doc. 31, at 9).

On November 21, 2023, Penske filed the instant motion as well as a brief in support. (Doc. 33; Doc. 34). On December 4, 2023, Mr. Cabral filed a brief in opposition. (Doc. 37). On December 18, 2023, Penske filed a reply brief. (Doc. 38).

The undersigned was assigned to this case on February 7, 2024. Oral argument on Penske's motion was held on April 10, 2024. (Doc. 45). Accordingly, this matter is ripe for discussion.

## II.   LEGAL STANDARDS

### A.   MOTION TO DISMISS FOR LACK FOR JURISDICTION

Rule 12(b)(1) of the Federal Rules of Civil Procedure authorizes a defendant to move to dismiss for "lack of subject-matter jurisdiction." Fed. R. Civ. P. 12(b)(1). A motion to dismiss under Rule 12(b)(1) may be treated as either a facial or factual challenge to the court's subject matter jurisdiction. *Gould Electronics Inc. v. United States*, 220 F. 3d 169, 176 (3d Cir. 2000). In a facial challenge under Rule 12(b)(1), a defendant argues that "the complaint, on its face, does not allege sufficient grounds to establish subject matter jurisdiction." *D.G. v. Somerset Hills School Dist.*, 559 F. Supp. 2d 484, 491 (D.N.J. 2008). In response to the defense's facial challenge of subject-matter jurisdiction, the Court "must consider the allegations of the complaint as true." *Mortensen v. First Fed. Savings & Loan Association*, 549 F.2d 884, 891 (3d

Cir. 1977). In a factual challenge under Rule 12(b)(1),"the trial court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case." *Mortensen*, 549 F.2d at 891. "Evidence outside the pleadings [may be examined] to determine ... jurisdiction." *Gould Electronics Inc. v. United States*, 220 F. 3d 169, 178 (3d Cir. 2000). "When a motion under Rule 12 is based on more than one ground, the court should consider the 12(b)(1) challenge first because if it must dismiss the complaint for lack of subject matter jurisdiction, all other defenses and objections become moot." *In re Corestates Trust Fee Litigation*, 837 F. Supp. 104, 105 (E.D. Pa. 1993), *aff'd* 39 F.3d 61 (3d Cir. 1994). "Rule 12(b)(1) motions may be filed at any time and repeatedly, if the movants assert new arguments warranting [the court's] attention." *Fahnsestock v. Reeder*, 223 F. Supp. 2d 618, 621 (E.D. Pa. 2002).

"Article III of the Constitution limits federal-court jurisdiction to 'Cases' and 'Controversies.'" *Massachussetts v. EPA*, 549 U.S. 497, 515, (2007). Under Article III, "the question of standing is whether the litigant is entitled to have the court decide the merits of the dispute or of particular issues.'" *In re Google Inc. Cookie Placement Consumer Priv. Litig.*, 806 F.3d 125, 134 (3d Cir. 2015) (quoting *Storino v. Borough of Point Pleasant Beach*, 322 F.3d 293, 296 (3d Cir. 2003) (internal quotation marks omitted)). "If [the] plaintiffs do not possess Article III standing, [] the District Court lack[s] subject matter jurisdiction to address the merits of [the] plaintiffs' case." *Storino*, 322 F.3d at 296.

To satisfy the constitutional standing requirements, a plaintiff must show "(1) it has suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC) Inc.*,

528 U.S. 167, 180-81 (2000) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992)). "If the plaintiff does not claim to have suffered an injury that the defendant caused and the court can remedy, there is no case or controversy for the federal court to resolve." *TransUnion LLC v. Ramirez,* 594 U.S. 413, 423 (2021) (quoting *Casillas v. Madison Avenue Assocs., Inc.*, 926 F.3d 329, 333 (CA7 2019)) (Barrett, J.)). According to the Third Circuit, "[i]n assessing injury in fact, we look for an 'invasion...which is (a) concrete and particularized; and (b) actual or imminent, not conjectural or hypothetical.'" *In re Google*, 806 F.3d at 134. A "concrete" injury is one that exists in fact—a "real" injury. *Spokeo, Inc. v. Robins,* 578 U.S. 330, 340 (2016). However, whereas "intangible injuries can nevertheless be concrete," the violation of a federal statute alone is not enough to establish the requisite concrete injury needed for standing. *Spokeo*, 578 U.S. at 340; *TransUnion, LLC*, 594 U.S. at 440-41; *see also Barclift v. Keystone Credit Servs., LLC,* No. 22-1925, 2024 WL 655479, at *2-3, *5 (3d Cir. Feb. 16, 2024). Where the Court has identified an intangible harm allegedly brought by a statutory violation, the court must determine "whether [the] plaintiff[] ha[s] [also] identified a close historical or common-law analogue for their asserted injury."[1] *TransUnion, LLC*, 594 U.S. at 424.

B.  Motion to Dismiss for Failure to State a Claim

Rule 12(b)(6) of the Federal Rules of Civil Procedure authorizes a defendant to move to dismiss for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "Under Rule 12(b)(6), a motion to dismiss may be granted only if, accepting all well-pleaded allegations in the complaint are true and viewing them in the light most favorable to

---

[1] The Supreme Court also clarified in *TransUnion* that a congressionally defined injury lacking a common-law analogue is insufficient for Article III purposes. *TransUnion*, 594 U.S. at 425-26.

the plaintiff, a court finds the plaintiff's claims lack facial plausibility." *Warren Gen. Hosp. v. Amgen Inc.*, 643 F.3d 77, 84 (3d Cir. 2011) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007)). Although a court must accept the factual allegations in a complaint as true, it is not compelled to accept "unsupported conclusions and unwarranted inferences, or a legal conclusion couched as a factual allegation." *Morrow v. Balaski*, 719 F.3d 160, 165 (3d Cir. 2013) (quoting *Baraka v. McGreevey*, 481 F.3d 187, 195 (3d Cir. 2007)). Additionally, a court need not assume that a plaintiff can prove facts that the plaintiff has not alleged. *Associated Gen. Contractors of Cal. v. California State Council of Carpenters*, 459 U.S. 519, 526 (1983).

In *Ashcroft v. Iqbal*, the United States Supreme Court held that, when considering a motion to dismiss, a court should "begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." 556 U.S. 662, 679 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. "Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. In evaluating a motion to dismiss, a court may consider the facts alleged on the face of the complaint, as well as "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007).

C. MOTION TO STRIKE

Rule 12(f) of the Federal Rules of Civil Procedure permits the Court to "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." The "purpose of a motion to strike is to clean up the pleadings, streamline litigation, and avoid unnecessary forays into immaterial matters." *Natale v. Winthrop Res. Corp.*, No. 07-2686, 2008 WL 2758238, at *14 (E.D. Pa. July 9, 2008) (internal quotation marks omitted).

"Content is immaterial when it has no essential or important relationship to the claim for relief. Content is impertinent when it does not pertain to the issues raised in the complaint. Scandalous material improperly casts a derogatory light on someone, most typically on a party to the action." *Champ v. USAA Casualty Insurance Company*, 2020 WL 1694372, at *2 (E.D. Pa. 2020) (quoting *Lee v. Eddystone Fire & Ambulance*, No. 19-cv-3295, 2019 WL 6038535, at *2 (E.D. Pa. Nov. 13, 2019) (quotation omitted)). "[S]triking a pleading or a portion of a pleading 'is a drastic remedy to be resorted to only when required for the purposes of justice.'" *Champ,* 2020 WL 1694372, at *2 (quoting *Lee v. Dubose Nat'l Energy Servs., Inc.*, No. 18-cv-2504, 2019 WL 1897164, at *4 (E.D. Pa. Apr. 29, 2019). Thus, motions to strike pursuant to Rule 12(f) are generally disfavored "unless the allegations have no possible relation to the controversy and may cause prejudice to one of the parties, or if the allegations confuse the issues in the case." *Natale*, 2008 WL 2758238, at *14 (quoting *River Rd. Devel. Corp. v. Carlson Corp.*, No. 89-7037,1990 WL 69085, at *2 (E.D. Pa. May 23, 1990)); *Eddystone Fire*, 2019 WL 6038535 at *3. "When faced with allegations that could possibly serve to achieve a better understanding of plaintiff's claims or perform any useful purpose in promoting the just disposition of the litigation, courts generally deny such motions to strike." *Cestra v. Mylan, Inc.*, No. 14-825, 2015 WL 2455420, at *7 (W.D. Pa. May 22, 2015) (quoting *Eisai Co. v. Teva Pharm. USA, Inc.*, 629 F. Supp. 2d 416, 425 (D.N.J. 2009), *as amended* (July 6, 2009)).

## III.   DISCUSSION

### A. STANDING

Penske argues that Mr. Cabral lacks standing to bring this action, asserting that Mr. Cabral has not alleged an injury beyond a mere violation of the TCPA. (Doc. 34, at 15). Mr.

Cabral disagrees and avers that Third Circuit caselaw supports his contention that he has standing to bring this action.[2] (Doc. 37, at 14-15). "[W]hen there is a question as to [the Court's] authority to hear a dispute, it is incumbent upon the court [ ] to resolve such doubts ... before proceeding to ... the merits." *Zambelli Fireworks Mfg. Co., Inc. v. Wood*, 592 F.3d 412, 418 (3d Cir. 2010) (cleaned up). Accordingly, the Court begins its inquiry by resolving whether it has jurisdiction to hear Mr. Cabral's TCPA claim.

"The TCPA provides consumers with a private right of action for certain prohibited uses of automated telephone equipment." *Susinno v. Work Out World Inc.*, 862 F.3d 346, 348 (3d Cir. 2017); *see* 47 U.S.C. § 227(b)(3). "In enacting the TCPA, Congress found that banning robocalls was 'the only effective means of protecting telephone consumers from this nuisance and privacy invasion.'" *Barr v. Am. Ass'n of Pol. Consultants, Inc.*, 140 S. Ct. 2335, 2344 (2020) (quoting TCPA § 2, ¶12). According to the TCPA, it is unlawful for any person in the United States "to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice" to "any telephone number assigned to a paging service, cellular telephone service, specialized mobile radio service, or other radio common carrier service, or any service for which the called party is charged for the call." 47 U.S.C. § 227(b)(1)(a)(iii).

---

[2] When a party brings a factual challenge to standing as Penske has here, it "attacks allegations underlying the assertion of jurisdiction in the complaint, and [therefore] it [is allowed] to present competing facts." *Hartig Drug Co. Inc. v. Senju Pharm.* Co., 836 F.3d 261, 268 (3d Cir. 2016); *see also Const. Party of Pa. v. Aichele*, 757 F.3d 347, 358 (3d Cir. 2014). When reviewing a factual challenge to standing, the court "may weigh and consider evidence outside the pleadings" and "no presumptive truthfulness attaches to [the] plaintiff's allegations." *Hartig*, 836 F.3d at 268 ("[A] factual challenge strips the plaintiff of the protections and factual deference provided under 12(b)(6) review."). The burden of proving jurisdiction remains on the plaintiff. *Hartig*, 836 F.3d at 268.

To establish Article III standing, a plaintiff must allege they suffered "(1) a concrete, particularized, and actual or imminent injury, (2) that was likely caused by the defendant, and (3) would likely be redressable by a favorable judicial decision." *Morales v. Commonwealth Fin. Sys., Inc.*, No. 22-3388, 2023 WL 8111458, at *2 (3d Cir. Nov. 22, 2023) (citing *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021)). "If 'the plaintiff does not claim to have suffered an injury that the defendant caused and the court can remedy, there is no case or controversy for the federal court to resolve.'" *TransUnion LLC*, 594 U.S. at 423 (quoting *Casillas v. Madison Avenue Assocs., Inc.*, 926 F.3d 329, 333 (7th Cir. 2019)). A plaintiff's injury must be concrete, meaning "real, and not abstract." *Spokeo, Inc. v. Robins*, 578 U. S. 330, 340 (2016). However, a concrete injury may be either tangible, such as physical or monetary harm, or intangible, such as reputational harm. *TransUnion LLC*, 594 U.S. at 425. This case deals with the latter.

To establish an intangible concrete injury, courts look to whether the alleged injury resembles "a close historical or common-law analogue." *TransUnion LLC*, 594 U.S. at 424. Third Circuit has recognized that sending unwanted, pre-recorded calls and texts in the manner prohibited by the TCPA amounts to the tort of intrusion upon seclusion. *Susinno*, 862 F.3d at 351. Such calls invade phone users' privacy interests and are a nuisance. *Susinno*, 862 F.3d at 350. This characterization is aligned with the harm Congress identified when enacting the TCPA. *Susinno*, 862 F.3d at 350. Accordingly, the Third Circuit has held that the "nuisance and invasion of privacy" resulting from a single prerecorded telephone call are sufficient injuries to satisfy Article III standing. *Susinno*, 862 F.3d at 350-51; *see also Manuel v. NRA Group LLC*, 2018 WL 388622 (3d Cir. 2018) (finding an alleged violation of the TCPA was a sufficient "concrete injury to establish Article III standing," and citing *Susinno*) (not precedential). Still, simply alleging a violation of the TCPA is likely not enough. *See Leyse v.*

*Bank of America National Association.* 856 F. App'x 408 (3d Cir. 2021) (not precedential). A plaintiff must specifically allege "harm stemming from nuisance, invasions of privacy, and other such injuries," associated with the TCPA violation to satisfy their burden and establish standing. *Leyse,* 856 F. App'x at 410.

Mr. Cabral alleges "Defendant's unsolicited prerecorded calls caused Plaintiff and the Class members actual harm, including invasion of privacy, intrusion upon seclusion, and intrusion into the peace and quiet in a realm that is private and personal to Plaintiff and the Class members." (Doc. 31, ¶ 18). This allegation is sufficient to meet his burden of establishing standing. *See, e.g., Doyle v. Matrix Warranty Sols.,* Inc., 679 F. Supp. 3d 42, 43 (D.N.J. 2023) (finding plaintiff's claim that he received a prerecorded call, and that the call amounted to an invasion of privacy sufficient to establish the court's jurisdiction to hear his TCPA claim); *cf. Camunas v. Nat'l Republican Senatorial Comm.,* 541 F. Supp. 3d 595, 601 (E.D. Pa. 2021) (finding plaintiff had standing to bring a TCPA claim because he alleged unsolicited communication was "annoying, disruptive, frustrating and an invasion of his privacy."). In response, Penske argues that Mr. Cabral suffered no harm because he "expressly requested in writing that Penske contact him about his moving plans. Plaintiff provided his phone number to Penske when he requested a quote for a vehicle rental, and Plaintiff expressly authorized Penske, in writing, to contact him using automated technology." (Doc. 34, at 6). Mr. Cabral denies that the voicecall from Penske was solicited, asserting Penske's argument ignores the fact that Mr. Cabral did not consent to prerecorded messages. (Doc. 37, at 13). Mr. Cabral also argues that "Defendant's argument conflates its affirmative defense of consent with whether Plaintiff has Article III standing" and "[w]hether Plaintiff consented to Defendant's call (he did not) is not relevant to the standing inquiry, it pertains to the merits of Plaintiff's

claims." (Doc. 37, at 15, 17).

Because Penske has raised a factual challenge to this Court's jurisdiction, the Court may consider the evidence Penske submitted to support its position. *Hartig Drug Co. Inc. v. Senju Pharm. Co.*, 836 F.3d 261, 268, 269 (3d Cir. 2016). Specifically, Penske directs the Court's attention to a declaration from its Director of the Consumer Rental Contact Center ("Contact Director"). (Doc. 30-1). Therein, the Contact Director explains the process by which Mr. Cabral requested a quote for the moving services Penske offers. (Doc. 30-1, at 3). The Contact Director confirms that Mr. Cabral provided Penske his phone number and that "record would not have been created if Plaintiff had not completed and submitted the Contact Form with the Contact Authorization box checked." (Doc. 30-3). According to Penske, this evidence supports their argument that Mr. Cabral consented receive to the voicecall Penske left him. (Doc. 34, at 20). While Mr. Cabral submits no evidence to refute this, he maintains that his consent did not extend to the prerecorded voicecall he received. (Doc. 37, at 7). Mr. Cabral argues the TCPA "requires specific and explicit consent for autodialed or prerecorded calls. Defendant failed to secure the required consent and cannot contend that Plaintiff and the class members were not harmed because they provided their telephone numbers to Defendant." (Doc. 37, at 7). Thus, the parties dispute the scope of Mr. Cabral's consent.

Considering *supra*, the issue of consent is better resolved after discovery. This is especially true given that whether Mr. Cabral gave Penske consent for the communication goes directly to the merits of Mr. Cabral's claims. *See Fridline v. Integrity Vehicle Grp., Inc.*, No. 4:23-CV-01194, 2023 WL 7170642, at *2 (M.D. Pa. Oct. 31, 2023) ("To state a cause of action under the TCPA , a plaintiff must allege that . . . (2) *the recipient did not give express consent to receive the call*. . .(internal citations omitted and emphasis added)). Accordingly, the parties

10

may argue the scope of Mr. Cabral's consent later in this litigation. *See Viggiano v. Lakeshore Equip. Co.*, No. 17-CV-00707 (PGS), 2018 WL 11310868, at *4 (D.N.J. Jan. 11, 2018) (finding that, for the purposes of defendant's motion to dismiss, plaintiff sufficiently pled standing because he alleged that he received unsolicited messages even though defendants argued these messages were consented to. Recognizing that there were fact issues to be visited later in the litigation, the court provided, "Defendant may re-open the issue if the evidence shows that Plaintiff [consented and therefore] manufactured her injury. . . However, for the present motion, since Plaintiff's Complaint is grounded upon the TCPA, the Court has subject matter jurisdiction."). At this juncture, the Court finds Mr. Cabral has sufficiently established standing to bring his TCPA claims in this Court. *See Zondlo v. Allied Interstate, LLC*, 290 F. Supp. 3d 296, 300–02 (M.D. Pa. 2018) (rejecting the defendant's argument that the plaintiff "wanted" to receive phone calls from the defendant, and finding that "because the plaintiff alleges that she received unwanted phone calls from the defendant, in violation of the TCPA, plaintiff has suffered an injury and does have standing to pursue this claim").

B. SUFFICIENCY OF MR. CABRAL'S TCPA CLAIM

The parties next dispute the sufficiency of Mr. Cabral's claim under the TCPA. (Doc. 34, at 22). Mr. Cabral alleges that Penske violated the TCPA's prohibition against making an unsolicited call using an artificial or prerecorded voice. (Doc. 31, ¶ 31) (It shall be unlawful. . . to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice")); 47 U.S.C. § 227(b)(1)(A)(iii). "Courts weighing the plausibility of TCPA claims generally require plaintiffs to aver facts supporting three elements: (1) the defendant or their agent initiated a call to a cell phone number belonging to

the plaintiff, (2) using a prerecorded or artificial voice, and (3) without obtaining the plaintiff's prior consent." *Shoemaker v. Zeitlin*, No. 1:21-CV-1668, 2023 WL 3826460, at *9 (M.D. Pa. June 5, 2023). Here, the parties disagree about whether Mr. Cabral has sufficiently alleged the call he received was from a prerecorded source. (Doc. 34, at 22; Doc. 37, at 11).

Courts in this circuit have recognized the following averments to be indicative of a pre-recorded call: "1) a delay before hearing the message, 2) calls ending with a beep, 3) instructions to call a 1-800 number, 4) an unusual phone number or short code instead, 5) a robotic voice on the other end, or 6) the absence of anything specific to the person being called." *Smith v. Am.-Amicable Life Ins. Co. of Texas*, No. CV 22-333, 2022 WL 1003762, at *2 (E.D. Pa. Apr. 4, 2022); *see also Smith v. Pro Custom Solar LLC*, No. CV1920673KMESK, 2021 WL 141336, at *2–3 (D.N.J. Jan. 15, 2021). Mr. Cabral alleges his voicecall was clearly prerecorded because it contained a robotic, generic sounding voice and was not "a live person" reading a script. (Doc. 31, ¶¶ 10, 11, 12). Additionally, Mr. Cabral alleges that "consumers have posted recordings on the Internet of the same robocall received by Plaintiff." (Doc. 31, ¶ 13). Unlike cases dismissing TCPA claims because the plaintiff, "has not pled any facts relative to an automatic telephone dialing system or to an artificial or prerecorded voice," Mr. Cabral has made at least some factual statements supporting his allegation that Penske contacted him using a prerecorded message. (Doc. 31, ¶¶ 12-14); *Despot v. Allied Interstate, Inc.*, No. CV 15-15, 2016 WL 4593756, at *5 (W.D. Pa. Sept. 2, 2016); *see Trumper v. GE Cap. Retail Bank*, 79 F. Supp. 3d 511, 513 (D.N.J. 2014) (dismissing a claim asserted under the TCPA because the complaint "provide[d] no factual allegations suggesting that that the voice on the other end of the line was prerecorded" and "said nothing about the calls [Plaintiff] received"); *see also Manopla v. Sansone Jr.'s 66 Automall*, No. CV1716522FLWLHG, 2020 WL 1975834, at

*2 (D.N.J. Jan. 10, 2020) (Suggesting that alleging "the fact that [the] voice message was pre-recorded is patently obvious to the naked ear when listening to the message," would aid in establishing the pre-recorded nature of a call for the purposes of a TCPA claim). The Court therefore concludes that, at this early stage of the litigation, Mr. Cabral's allegations are sufficient for his TCPA claim to survive. *Dudley v. Vision Solar, LLC*, No. CV 21-659, 2021 WL 3077557, at *3 (E.D. Pa. July 21, 2021) (denying a motion to dismiss where "it remains plausible that the alleged calls contained an artificial or prerecorded voice."). The Court declines to dismiss Mr. Cabral's claim at this time.

### C. CLASS ALLEGATIONS

In the alternative, Penske argues that all class allegations should be struck from Mr. Cabral's amended complaint. (Doc. 34, at 25). Mr. Cabral argues otherwise, stating "Defendant's request ignores that courts in this Circuit almost always decide whether a plaintiff has met the requirements of Rule 23 on a motion for class certification, not on a motion to dismiss." (Doc. 37, at 20). The Court agrees with Mr. Cabral.

"[C]ourts within the Third Circuit have. . . [found] a motion to strike class allegations premature where a motion for class certification has not been made and denied." *Martin v. Ford Motor Co.*, 765 F. Supp. 2d 673, 680 (E.D. Pa. 2011). "[I]n general, a court should wait to resolve a motion to strike class allegations until someone moves for class certification." *P.V. ex rel. Valentin v. Sch. Dist. of Phila.*, 2011 WL 5127850, at *3 (E.D. Pa. Oct. 31, 2011); *see also Richard Roe W.M. v. Devereux Found.*, 650 F. Supp. 3d 319, 336 (E.D. Pa. 2023). "It is only when no amount of discovery or time will allow for plaintiffs to resolve deficiencies in class definitions under Rule 23, that a motion to strike class allegations should be granted." *Luciano v. Tchrs. Ins. & Annuity Ass'n of Am - Coll. Ret. Equities Fund*, No. CV156726ZNQDEA, 2022

WL 1044969, at *3 (D.N.J. Apr. 7, 2022) (internal quotation marks omitted); *see also Jackson v. Locust Med., LLC*, No. 4:22-CV-00424, 2022 WL 16540675, at *2 (M.D. Pa. Oct. 28, 2022). Because this case contains questions of fact and law to be resolved, the Court will deny Penske's motion to strike. *See Abramson v. AP Gas & Elec. (PA), LLC*, No. CV 22-1299, 2023 WL 1782728, at *6 (W.D. Pa. Feb. 6, 2023), *motion to certify appeal denied*, No. CV 22-1299, 2023 WL 2714340 (W.D. Pa. Mar. 30, 2023) (finding it premature to strike class allegations whether discovery could reveal the viability of class claims pursuant the TCPA). The Court will consider the issue of class certification upon the filing of a motion by Plaintiff.

## IV.   CONCLUSION

For the foregoing reasons, Penske's motion to dismiss is **DENIED**. (Doc. 33). An appropriate Order follows.

BY THE COURT:

Dated: May 1, 2024

*s/ Karoline Mehalchick*

**KAROLINE MEHALCHICK**
**United States District Judge**